UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEVIN R. TURNER,     Plaintiff,

v.     Civil Action No. 3:20-cv-346-DJH-RSE

JEREMY D. MABE et al.,     Defendants.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff Kevin Turner sued Defendants Jeremy Mabe, the Kentucky State Police (KSP), and the Commonwealth of Kentucky, alleging violations of state and federal law arising out of Turner's arrest at his home on May 23, 2019. (Docket No. 1) The Court dismissed all official-capacity claims against Mabe, all claims against KSP, and Turner's claim for intentional infliction of emotional distress. (*See* D.N. 20) Mabe and the Commonwealth now move for summary judgment on the remaining counts. (D.N. 41) After careful consideration, the motion for summary judgment will be granted in part and denied in part for the reasons set out below.

**I.**

On May 20, 2019, an incident occurred between Turner and his minor daughter, K.T., at his home in Hardin County, Kentucky. (D.N. 47, PageID.180; D.N. 41-1, PageID.156)[1] Turner admits that he and his daughter exchanged "adversarial words" and that K.T. "report[ed] the incident to her manager at work the next day." (D.N. 47, PageID.180) According to a police

---

[1] Turner's response includes a verification pursuant to 28 U.S.C. § 1746 that all facts therein are "true and correct." (D.N. 47, PageID.194) A verified briefing "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Thus, the Court will consider his response as evidence for purposes of the summary-judgment motion. *Id.*

report, K.T. told a coworker that her father "had been physically abusing her" and that the abuse made her so unwell that she might "pass out due to her anxiety." (DN 41-1, PageID.156)

On May 23, 2019, KSP Sergeant Jeremy Mabe and another officer went to Turner's home to do a welfare check on K.T. (*See id.*; D.N. 47, PageID.180) But when the officers asked to speak to K.T., Turner would not let them into his home. (D.N. 47, PageID.180–81) K.T. had been in trouble with the law previously, and Turner thought the state police were there to question or arrest her, not him. (*Id.*) Mabe again asked to enter the home and speak to K.T., but Turner again refused, stating that he would not let the police speak to his daughter because he wanted himself or "an attorney present with her." (*Id.* at PageID.181) Eventually, despite lacking consent or a warrant, Mabe forced his way into the residence and "assaulted and battered" Turner. (*See id.*; D.N. 41-1, PageID.156) Turner was then arrested at the scene and charged with "obstructing governmental operations" and two counts of "menacing," both misdemeanors in Kentucky. (D.N. 47, PageID.181; *see* D.N. 41-1, PageID.156)

Two weeks later, on June 4, 2019, an arrest warrant was issued against Turner for "Assault, 4th Degree (Domestic Violence) No Visible Injury." (D.N. 41-2, PageID.165) The charge arose from the earlier altercation between Turner and K.T. at their home on May 20, 2019. (*Id.*) This was the same altercation that led Sgt. Mabe to attempt a welfare check on May 23, 2019. (*Id.*) The defendants offer no explanation as to why the police waited two weeks after the domestic-violence incident to secure a warrant. (*See* D.N. 41) Turner was arrested for assault (domestic violence) on June 7, 2019. (D.N. 41-2, PageID.165–66)

The prosecutor dismissed the obstruction, menacing, and assault charges on October 21, 2019. (D.N. 41-1, PageID.154 (detailing the dismissal of the obstruction and menacing charges); D.N. 41-2, PageID.161 (detailing the dismissal of the assault charge)) In exchange for the

dismissal, "Turner stipulated to probable cause on the domestic violence charge." (D.N. 41, PageID.143 (citing D.N. 41-2, PageID.164 ("Stip PC," which the defendants maintain stands for "stipulated probable cause," is handwritten on case documents))); D.N. 41-2, PageID.166 ("SPC" is handwritten, indicating the same))

Turner sued Mabe, the KSP, and the Commonwealth of Kentucky on May 15, 2020. (D.N. 1) Turner asserted claims against Mabe in his official and individual capacities under 28 U.S.C § 1983 and Kentucky law for wrongful arrest, unlawful imprisonment, assault, battery, intentional infliction of emotional distress (IIED), and unspecified violations of the Kentucky Constitution. (*Id.*, PageID.5–9) Turner also brought claims for negligent hiring and retention against KSP and the Commonwealth. (*Id.*) On February 24, 2021, this Court dismissed all claims against KSP, all official-capacity claims against Mabe, and the IIED claim. (D.N. 20, PageID.94) Mabe and the Commonwealth now move for summary judgment on all remaining counts. (D.N. 41)

**II.**

The Court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Mabe and the Commonwealth seek summary judgment on five grounds:

(1) Turner's stipulation to probable cause, arraignments, and arrest warrant issued in the underlying criminal cases, and his admission to obstruction in the Complaint herein defeat his false arrest claim;

(2) with reasonable grounds for the arrest, the force used to arrest was privileged and justified, thereby defeating assault and battery claims;

(3) Kentucky does not recognize a tort cause of action for alleged state constitutional violations;

(4) Sgt. Mabe is entitled to federal and state qualified immunity; and

(5) all claims against the Commonwealth are barred by Eleventh Amendment and state-law sovereign immunity.

(D.N. 41, PageID.136–37) The Court will address each argument in turn.

**A.　False Arrest**

The defendants argue that Turner's false-arrest claim fails as a matter of law because Turner "stipulated" that there was probable cause to arrest him "on the domestic violence charge." (*Id.*, PageID.143–44) "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)); *see, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citation omitted). Kentucky

4

jurisprudence similarly requires a plaintiff to establish that an officer lacked probable cause in order to succeed on a false-arrest claim. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007) (holding that officers are not liable for false imprisonment if they enjoy a "privilege" to detain the plaintiff, such as "an arrest without a warrant in which the officer has probable cause"). Importantly, a false-arrest claim fails so long as the officer had probable cause for *any* crime that may have been committed, not just what the officer charged at the scene. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

The defendants argue that Turner "would have to prove there was no probable cause for his arrest for any" crime to succeed on his false-arrest claim, and that because Turner "stipulated to probable cause on the domestic violence charge," he "cannot prove the absence of probable cause and has no false arrest claim." (D.N. 41, PageID.143–44) Turner responds that although he stipulated to probable cause for his domestic-violence arrest, "[a]t no time did [he] admit to any obstruction" or menacing. (D.N. 47, PageID.183) The distinction is significant because there are four charges and two arrests at issue in this case. Turner was arrested on four charges: (1) one count of obstructing governmental operations, (2) two counts of menacing, and (3) one count of assault (domestic violence). (D.N. 41-1, PageID.154 (listing the obstruction and menacing charges); D.N. 41-2, PageID.161 (listing the assault charge)) He was arrested on the first three charges on May 23, 2019. (D.N. 41-1, PageID.154) He was not arrested on the assault (domestic violence) charge until June 7, 2019. (D.N. 41-2, PageID.165–66)

There is an open factual question as to whether Turner stipulated that the police had probable cause to arrest him for assault (domestic violence) on May 23, 2019, or if he stipulated that they had probable cause to arrest him for assault (domestic violence) on June 7, 2019. If he stipulated to the former, then he agrees the police had probable cause to arrest him for a crime on

May 23, 2019, and the stipulation would defeat his false-arrest claim. *See Devenpeck*, 543 U.S. at 152 (holding that an arrest is lawful so long as the officer had probable cause that *any* crime had been committed); *see also Grise v. Allen*, 714 F. App'x 489, 495 (6th Cir. 2017) (recognizing that stipulations like Turner's preclude a subsequent false-arrest claim because (1) "it is plainly inconsistent to stipulate to the existence of probable cause in one case and then allege its absence in a later case"; (2) even if the state court "did not expressly adopt [the plaintiff's] stipulation, it did enter its order of dismissal on that condition"; and (3) if Turner "only secured dismissal of the charges against him by stipulating that probable cause existed, he would 'derive an unfair advantage'" if he were permitted to reverse his position in his civil suit and potentially obtain damages by showing a lack of probable cause" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001))). So long as the police had probable cause to arrest Turner for *something* on May 23, his false-arrest claim would fail. *See Devenpeck*, 543 U.S. at 152.

On the other hand, if Turner only stipulated that the police had probable cause to arrest him for assault on June 7, 2019, that would leave open the question of whether the police had probable cause to arrest him for any crime (menacing, obstruction, or assault) on May 23, 2019. The arrest warrant on the assault charge was not generated until June 4, 2019. (D.N. 41-2, PageID.165) The two-week delay between the altercation at Turner's house and the issuance of the arrest warrant is potentially significant, and the defendants offer no explanation for the delay in their motion or attachments. (*See* D.N. 41; D.N. 41-1; D.N. 41-2) It is possible that the police waited two weeks because additional investigative steps were taken to *obtain* probable cause for the assault charge, such as speaking with additional witnesses or with K.T. herself. In that case, the stipulation would not preclude Turner's claim for false arrest on May 23, 2019. *See Devenpeck*, 543 U.S. at 152; *Grise*, 714 F. App'x at 495. Instead, the parties would need to litigate whether Mabe had probable

6

cause for any arrest on May 23, 2019, which would require additional briefing because the events surrounding Turner's arrest remain in dispute. (*See* D.N. 41)

The parties disagree as to what took place at Turner's house on May 23, 2019. The defendants attached a copy of the police report to their summary-judgment motion that outlines the officers' version of events. (*See* D.N. 41-1, PageID.156) The report states that Turner "ma[de] an aggressive advance towards" Mabe, which led Mabe to "push[ Turner] into the residence." (*Id.*) Turner contests the veracity of the report, alleging that Mabe "falsely reported the facts surrounding the 'incident' in his report in an effort to deceive prosecutors and investigators as to the true facts." (D.N. 47, PageID.181) Notably, the parties provide no other evidentiary support to clarify the events of that day, such as deposition testimony, interrogatories, or other documentary evidence. Therefore, the facts surrounding Turner's May 23, 2019 arrest remain in dispute. Because "neither party has offered sufficient facts, properly supported with evidence," the Court cannot determine whether Mabe had probable cause on May 23, 2019, and therefore "concludes that it would be inappropriate to grant or deny summary judgment at this time without further development of the factual record." *El Bey*, 2022 WL 1420743 at *8–*9.

The factual record thus far is insufficient to determine the scope and application of Turner's probable-cause stipulation. (*See* D.N. 41; D.N. 47) Although the Court recognizes that such stipulations are commonplace in state courts and are frequently denoted on court documents as "SPC" or "Stip PC," the Court is not prepared at this stage to take judicial notice of the stipulation at issue here without more clarity as to its context. Thus, there remains a genuine question of material fact as to whether the stipulation precludes Turner's false-arrest claim. Summary judgment on that claim is therefore inappropriate at this time. *See* Fed. R. Civ. P. 56(a).

B.   **Assault and Battery**

The defendants next move for summary judgment on the assault and battery claims against Mabe in his individual capacity. (D.N. 41, PageID.136) They argue that "[s]ince there was probable cause for the arrest, Sgt. Mabe was justified in using force to effect the arrest," and Turner's claims "fail as a matter of law." (*Id.*, PageID.145) Their argument therefore hinges on the existence of probable cause at the time of the May 23, 2019 arrest. As discussed above, the lack of clarity surrounding Turner's stipulation prevents the Court from determining whether Mabe had probable cause to arrest Turner on that date. Because there is insufficient evidence to determine whether the defendants had probable cause, and the defendants do not offer any other arguments as to why Mabe is entitled to summary judgment on Turner's assault and battery claims, the motion for summary judgment will be denied as to those counts. *See* Fed. R. Civ. P. 56(a).

C.   **State Constitutional Claims**

The defendants also move for summary judgment on Turner's state constitutional claims against Mabe in his individual capacity, arguing that "Kentucky does not recognize a tort cause of action for alleged state constitutional violations." (D.N. 41, PageID.136) They are correct that "Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights." *Faul v. Bd. of Educ. of Danville Indep. Sch.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013) (citing *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536–37 (Ky. 2011)); *see also Conn v. Deskins*, 238 F. Supp. 3d 924, 930 (E.D. Ky. 2017) (granting summary judgment for defendant on plaintiff's Kentucky constitutional claims because "Kentucky has not recognized a private right of action akin to" the *Bivens* action for federal constitutional violations (citations omitted)). Instead, the appropriate vehicle for remedying deprivations of Kentucky constitutional rights is a traditional tort action. *K.K. v. Clark Cnty. Bd. of Educ.*, 439 F.

8

Supp. 3d 905, 916 (E.D. Ky. 2020). Turner does not make any argument to the contrary. (*See* D.N. 47) Without a recognized cause of action, the defendants are entitled to judgment as a matter of law, and the Court must grant summary judgment on Turner's claims under the Kentucky Constitution. *See Conn*, 238 F. Supp. 3d at 930; *St. Luke Hosp., Inc.*, 354 S.W.3d at 536–37.

**D.     Qualified Immunity**

The defendants next argue that Mabe is "entitled to qualified immunity." (D.N. 41, PageID.148) The doctrine of "[q]ualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances []he confronted." *Modrell v. Hayden*, 636 F. Supp. 2d 545, 560 (W.D. Ky. 2009), *aff'd*, 436 F. App'x 568 (6th Cir. 2011) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). When evaluating a claim of qualified immunity, a court "must first consider whether, 'taken in the light most favorable to the party asserting the injury, . . . the facts alleged show that the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, the Court cannot conduct such an analysis. The factual issue in question, the scope of the stipulation, is central to whether Turner's constitutional rights were violated. If Mabe lacked probable cause to arrest Turner, then the arrest and corresponding use of force may have violated Turner's Fourth Amendment right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; *see Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020) (recognizing that a false-arrest claim implicates a plaintiff's Fourth Amendment rights); *Baker v. Union Twp.*, 587 F. App'x 229, 237–38 (6th Cir. 2014) (recognizing that assault and battery claims implicate the same). "[I]f genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper." *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) (citing *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir.

1988)). The Court finds that situation present here. Thus, at this stage, the Court cannot conclude whether Mabe is entitled to qualified immunity. *Id.*

**E.     Sovereign Immunity**

The defendants finally argue that "[a]ny remaining claims against the Commonwealth are barred" by sovereign immunity. (D.N. 41, PageID.150)  The Court did not address whether the Commonwealth is entitled to sovereign immunity at the motion-to-dismiss stage because the Commonwealth did not join Mabe and KSP's motion for dismissal. (*See* D.N. 6)  Nevertheless, the Court noted in its Order that the Commonwealth is likely entitled to sovereign immunity for the same reasons that KSP is. (*See* D.N. 20, PageID.94)  The Court therefore directed Turner to "show cause as to why the claims against the Commonwealth of Kentucky should not be dismissed." (*Id.*)  Turner responded that the Commonwealth was "in default" because it had "not appeared in this action" despite being served. (D.N. 22, PageID.95–96)  On April 27, 2021, the Court deferred dismissal of the claims against the Commonwealth "in light of the anticipated motion for entry of default." (D.N. 24, PageID.103)  Turner has not moved for entry of default against the Commonwealth, however.  The issue is again before the Court because the defendants, in their motion for summary judgment, argue "on behalf of the Commonwealth," that "the claims against the Commonwealth fail as a matter of law" because "federal Eleventh Amendment immunity and state-law sovereign immunity deprive[] this Court of jurisdiction." (D.N. 41, PageID.150)

The Eleventh Amendment prohibits federal courts from exercising subject-matter jurisdiction over a suit for money damages brought directly against the state, its agencies, and state officials sued in their official capacities. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–45, (1993); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Further, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Graham*, 473 U.S. at 168–69; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). And under Kentucky law, "absent a specific waiver, the Commonwealth and its departments are immune from constitutional suits under Section 231 of the Kentucky Constitution." *Buckner v. Kentucky*, No. 3:10-36-DCR, 2011 WL 741446, at *3 (E.D. Ky. Feb. 24, 2011) (citing, *e.g.*, *Wood v. Bd. of Educ.,* 412 S.W.2d 877, 879 (Ky. 1967)).

The Commonwealth has not waived its immunity against § 1983 actions, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193–94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Moreover, states are not considered "persons" within the meaning of § 1983 such that they are subject to these claims. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Lastly, Turner has not identified which section of the Kentucky Constitution Defendants allegedly violated, nor has he "identified any statute that waives sovereign immunity as to such violations." *Buckner*, 2011 WL 741446, at *3. In short, all applicable authority indicates that the claims against the Commonwealth are barred by Eleventh Amendment immunity and state-law sovereign immunity and therefore fail as a matter of law.

Turner believes that more discovery is needed to determine if sovereign immunity is applicable in this case. (*See* D.N. 47, PageID.184–93) He cites *Withers v. University of Kentucky*, which held that Kentucky agencies are only protected by sovereign immunity if (1) they are under the "direction and control of the central state government," and (2) the agency is "supported by moneys which are dispensed by the authority of the Commissioner of Finance out of the State

Treasury." 939 S.W.2d 340, 342 (Ky. 1997) (citing *Ky. Ctr. for Arts Corp. v. Berns*, 801 S.W.2d 327, 331 (Ky. 1990)). Turner appears to suggest that the Court needs more facts before it can determine whether the governmental defendants are under state direction and are funded by the treasury. (D.N. 47, PageID.186) But the only state agency that was a party to this case, KSP, has already had the claims against it dismissed. (D.N. 20, PageID.94) Only the Commonwealth itself remains a party in this suit. And it is axiomatic that the Commonwealth of Kentucky is under its own direction and is funded by the state treasury. *Id.*

Turner further argues, citing *Monell v. Department of Social Services* and its progeny, that he can sue the Commonwealth directly because it negligently hired and trained Mabe pursuant to official government policies. (D.N. 22, PageID.96–98) But *Monell* only authorized suits against municipal governments, not state governments. 436 U.S. 658, 690–91 (1978); *see also Alkire v. Irving*, 330 F.3d 802, 814–15 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993)). Plaintiffs may sue a city or county for damages, but not the Commonwealth of Kentucky. *Alkire*, 330 F.3d at 814–15. Thus, *Monell* has no application here. *Id.* Accordingly, all claims against the Commonwealth of Kentucky are barred by sovereign immunity and will be dismissed. *See Davis v. Univ. of Louisville*, No. 3:19-CV-849-CRS, 2021 WL 3710733, at *4 (W.D. Ky. Aug. 20, 2021) (granting summary judgment because the defendant, a state agency, was entitled to sovereign immunity).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion for summary judgment (D.N. 41) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Turner's state constitutional claims and all claims against the Commonwealth. Those claims are **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to terminate the Commonwealth of Kentucky as a defendant in this matter. The motion is **DENIED** as to Turner's false-arrest, assault, and battery claims against Mabe in his individual capacity.

(2) The Court requests that Magistrate Judge Regina S. Edwards schedule this matter for a status conference within **thirty (30) days** of entry of this Memorandum and Order.

March 28, 2023

David J. Hale, Judge
United States District Court